COLDWATER NATIONAL BANK *v.* BUGGIE.[1]

1. POWER OF ATTORNEY—PAROL EVIDENCE.

In an action on a note against a married woman, the pivotal question was whether defendant was the owner of a mercantile business managed by her husband under a firm name, in which name the note in suit was executed. It appeared that defendant had given her husband a power of attorney "to transact all my business of every name and nature; * * * to borrow money in my name, and to make all notes and other instruments necessary to carry into effect the powers hereby granted." There was evidence tending to show that the power of attorney was given by defendant at plaintiff's suggestion, communicated to her by plaintiff's attorney. The attorney testified, under the objection that his testimony tended to vary the terms of the instrument, that, when the power of attorney was granted, he told defendant that plaintiff wanted to know from her that her husband was managing the mercantile business for her, and wanted a power of attorney from her to him to sign all notes at plaintiff's bank; that the instrument was a general power, and gave him authority to mortgage and sell her real estate; and that she said it was all right,—that whatever her husband said about it was all right. *Held*, that the testimony was properly received; the power being broad enough to authorize her husband to act for her in any name in which she was carrying

[1] Rehearing denied September 27, 1898.

on business, and the testimony having some tendency to show that the mercantile business was hers.

2. PERSONAL PROPERTY—TITLE—DECLARATIONS OF POSSESSOR.
In an action against the wife of B. on a note executed by B. & Co., the statements of B., who managed the business of B. & Co., to the effect that his wife was sole owner, are not admissible to characterize his possession as other than that of owner.[1]

3. PRINCIPAL AND AGENT—EVIDENCE OF AUTHORITY.
The declarations of an agent are not admissible to show his authority.

Error to Branch; Yaple, J.   Submitted April 26, 1898. Decided June 28, 1898.

*Assumpsit* by the Coldwater National Bank against Mary E. Buggie on a promissory note.   From a judgment for plaintiff, defendant brings error.   Reversed.

*Palmer & Palmer* (*John B. Shipman*, of counsel ), for appellant.

*Campbell & Johnson* and *Champion & Champion*, for appellee.

MONTGOMERY, J.   When quite young, defendant went to live with her uncle and aunt in Coldwater, Mr. and Mrs. Frederick V. Smith, who were childless.   Her uncle was a man of considerable property, consisting of residences, a farm, and a store in which for many years he carried on a clothing business.   October 28, 1880, the defendant married John H. Buggie, who had no property. They went to live at Laporte, and after that to Hillsdale, but in the summer of 1885, at Mr. Smith's solicitation, they came back to live with him, and, to induce them to do so, he transferred to John H. Buggie his entire stock of clothing, receiving therefor his note for $7,000, and made him a seven-years lease of the store, at a rental of $1,000 per year, the bill of sale and lease being both dated August

---

[1] A similar question was considered in *Krementz* v. *Howard,* 109 Mich. 466.

24, 1885. From that date the clothing or store business was carried on in the name of J. H. Buggie & Co., that being the name on the sign at the store front, as well as the one used in all departments of the business; Mr. Smith being the "Co.," but having no interest in the firm, his name being used merely to help the credit of the concern. October 27, 1886, Mr. Smith died, leaving a will by which all of his property was bequeathed to his widow, the defendant's aunt, but the goods in the store were not included as a part of his estate, and did not pass to her. Mr. Buggie continued the business under the same name as before, Mrs. Smith tacitly taking the place of her husband in the firm. September 9, 1888, Mrs. Smith died, also leaving a will giving all of her property to the defendant, but neither the store business nor goods in it passed to her by it. After her death, Mr. Buggie carried on the business under the same name as before, and has so continued ever since. Whether Mrs. Buggie became owner of the business, and responsible for its debts, was the pivotal question on the trial of this case below, as it appears to be a conceded fact that the credit extended by the plaintiff was extended to that firm or concern, however composed.

The defendant's claim at the trial was that, at her aunt's decease, she took the place in the firm which her aunt had tacitly assumed, and supposed herself a partner, and liable as such, and that she acted in this belief until shortly before the suit was instituted, when she was advised that she could not be treated as a partner of her husband. The plaintiff, on the other hand, claimed (and the jury found in accordance with this contention) that the defendant became, at some time after her aunt's decease, the sole owner of the business, and that it was conducted by John H. Buggie as her agent. The defendant's counsel contend that there was no evidence supporting this claim. We think there was testimony of admissions made by defendant which tended to support plaintiff's theory. The weight of this testimony was properly left to the determination of the jury.

The other questions arising relate to rulings admitting certain testimony which was objected to. On the 26th of April, 1889, defendant gave to John H. Buggie a general power of attorney. Among the powers granted, as expressed in the language employed, were:

"For me, in my place and stead, to do and transact all my business of every name and nature;  *  *  *  to borrow money in my name, and to make and execute all papers, notes, conveyances, and other instruments necessary to carry into effect the powers hereby granted."

The plaintiff gave evidence tending to show that this power of attorney was given at the suggestion of the offcers of the bank, and that this suggestion was communicated to Mrs. Buggie by Mr. Barlow, the attorney for the bank. He testified that, when the power of attorney was executed, he told the defendant that the bank wanted to know from her that John was managing the business at the store for her, and they wanted a power of attorney from her to him to sign all notes at the bank; that the instrument was a general power, and gave John authority to mortgage and sell her real estate; that she said it was all right; that whatever John said about it was all right. It is contended that this testimony was incompetent, as tending to vary the terms of the power of attorney. We think it not open to this objection. The power was broad enough to authorize Mr. Buggie to act for her in any name in which she was carrying on business, and the testimony had some tendency to show that the business at the store was her business.

Plaintiff was permitted to introduce evidence of statements made by John H. Buggie to the effect that the defendant was the sole owner of the business carried on in the name of J. H. Buggie & Co. These statements were not received as impeaching testimony, but were distinctly received as characterizing the possession which John H. Buggie had; so that the question is whether, in a case to which the declarant is not a party, and not directly involving the goods, the declaration against interest of one

in possession of goods may be received to show that he is in possession as agent of another. It is plain that the effect of such declaration might be far-reaching, and involve a stranger in utter ruin. Whether, at the time these declarations were made, the business was prosperous, or whether, on the other hand, the firm was insolvent, does not appear, nor could the admissibility of such testimony well be made to depend upon such circumstances. If the business was insolvent, it is very plain to see that the insolvent merchant could, by his own declarations, nominally against interest, fix upon his more prosperous neighbor the liability of a failing concern by his unsworn declarations. We do not understand that the rule permitting declarations by one in possession as part of the *res gestœ* goes so far. The cases cited by counsel for plaintiff are, with possibly one exception, cases in which the property with reference to which the declarations were made was directly involved in the action, or the right of possession was involved. *Jacobs* v. *Callaghan,* 57 Mich. 11; *Avery* v. *Clemons,* 18 Conn. 306 (46 Am. Dec. 323). But in this case the title to specific goods was not in controversy. The question was in whose behalf a contract of borrowing was made. If the testimony characterizing possession was useful for any purpose, it was useful as a declaration by John H. Buggie that he so contracted on behalf of defendant. See *Carroll* v. *Frank,* 28 Mo. App. 69; *Darrett* v. *Donnelly,* 38 Mo. 492; 1 Rice, Ev. 424; *Burns* v. *Fredericks,* 37 Conn. 86; *Fellows* v. *Fellows,* 37 N. H. 75. That declarations of an agent are not admissible to show his authority is, of course, well settled. Mechem, Ag. § 100.

None of the other questions raised call for discussion.

The judgment is reversed, and a new trial ordered.

GRANT, C. J., MOORE and LONG, JJ., concurred. HOOKER, J., did not sit.