[No. 12694. Department Two. January 20, 1916.]

C. AUWARTER, *Respondent*, v. WILLIAM KROLL, *Appellant*.[1]

PRINCIPAL AND AGENT—EVIDENCE—DECLARATION OF AGENT—ADMISSIBILITY. While the fact of agency cannot be proved by the acts and declarations of the alleged agent, the same are admissible, if there is independent evidence of the agency, to show whether an alleged contract was in fact made by the agent, holding himself out as such.

APPEAL—REVIEW—HARMLESS ERROR. Error in refusing to permit a witness to state who was the owner of stock purchased is not prejudicial where he detailed the circumstances from which the jury could draw the conclusion as to ownership.

PRINCIPAL AND AGENT—POWERS OF AGENT—POWER OF ATTORNEY. The authority of an agent holding a general power of attorney which was recorded, cannot be limited, as to persons dealing with him without notice, by showing that the property dealt with was after-acquired property, that the agent had been instructed not to acquire it, or to show the circumstances under which the power was executed, as strangers had a right to rely on it.

TRIAL—INSTRUCTIONS—MISLEADING INSTRUCTIONS. An instruction to the jury to the effect that if, under the evidence and these instructions, your verdict is for the plaintiff, your verdict will be for the amounts prayed for in the two causes of action, etc., specifying the amount of each, and if in favor of the defendant, it will be simply for the defendant, is not misleading in that it prevented separate findings on each cause of action, where the issues had been clearly stated.

APPEAL—REVIEW—VERDICT. A verdict upon conflicting evidence, supported by substantial evidence, is conclusive on appeal.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered December 7, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Cannon & Ferris* and *D. W. Henley*, for appellant.

*Voorhees & Canfield*, for respondent.

FULLERTON, J.—The respondent, plaintiff below, brought this action against the appellant, setting up three causes of

[1]Reported in 154 Pac. 438.

action; the first upon a promise to pay a sum certain in consideration of the transfer of a certificate of sale of the property of a mining corporation; the second, for a balance due on an account for labor and services performed by the respondent for the appellant between July 21, 1908, and September 30, 1909; and the third, for labor and services performed by the respondent for the appellant between September 30, 1909, and September 30, 1910. After issue had been joined on the complaint, a trial was had before a jury, which returned a special verdict on each cause of action, finding for the respondent on each of them. The trial court entered judgment on the verdict in favor of the respondent on the first cause of action, and judgment notwithstanding the verdict for the appellant on the second and third causes of action. Both parties appealed from the judgment as entered, and this court affirmed it as to the first cause of action, and reversed and remanded it for a new trial as to the second and third causes of action. *Auwarter v. Kroll*, 79 Wash. 179, 140 Pac. 326. After the cause was remanded, it was tried as to the second and third causes of action, resulting in a verdict and judgment in favor of the respondent for the sums demanded. This appeal is from the last mentioned judgment.

The assignments of error first to be noticed relate to the admission of evidence. To an understanding of the questions involved, a brief review of the facts is necessary. In 1907, a corporation, known as Silver Lead Mining Company, owned certain mining claims, a mill, certain mill machinery, appliances, tools and other personal property, all situate in this state. In July of the year named, Arthur H. Kroll, a son of the appellant, purchased some five thousand shares of the treasury stock of the mining company, paying $500 therefor. In November of the same year, he contracted to purchase some ninety-five thousand additional shares, agreeing to pay therefor $9,500 at such times as the corporation might need the money in the prosecution of its mining enterprises.

Later on, the contract was consummated, Kroll borrowing from his father $5,000 of the money necessary for that purpose. After the purchase of the stock, Arthur H. Kroll was elected secretary of the company. The mining company was then largely indebted, some $12,500 of which was secured by mortgages on the company's property. These mortgages were taken up by the appellant in February, 1908, and about this time, perhaps a little later, the appellant advanced some $3,000 more for the use of the company, taking a combined chattel and real mortgage on the property of the company as security therefor. At about this time, also, the power of attorney quoted in the opinion in the case on the prior appeal was executed.

The respondent first met Arthur Kroll in March, 1908. The respondent was looking for an investment for some idle money that he then had, and, meeting Kroll, was induced to invest it in the corporation stock. As a part consideration for the purchase, he was given the option to withdraw his money, with interest at ten per centum, at any time within one year thereafter, in case he should, within that period, become dissatisfied with the investment. As a further part consideration for the contract of purchase, he was promised work at the mine, and immediately thereafter, on March 28 or 29, 1908, he went to the mine and worked therein for the corporation until July 17, 1908, when the mine was closed for want of funds to operate it. At this time the Krolls, father and son, had a large sum invested in the mine, in part in its capital stock, and in part for money loaned it and advanced to its use. There was also owing at that time by the corporation considerable sums to laborers, among whom was the respondent, whose claims were lienable against the corporation's property, and a number of such liens were filed, including one by the respondent. These liens were purchased by Arthur Kroll and assignments thereof taken from the several claimants.

Shortly after procuring the assignments for these labor claims, Arthur H. Kroll began an action thereon in his own name to foreclose the same. Included in the action were other large sums which the mining company was obligated to pay him, and which were likewise a lien upon the property of the company. The appellant, William Kroll, at the same time, began actions in foreclosure upon the mortgages held by him. There was also an action begun in the respondent's name to recover upon the contract to refund the money paid by him for corporate stock, he having elected within the year to rescind the contract of purchase. These actions were prosecuted to judgments, the property of the mining company sold thereunder, and, after the time for redemption had expired, namely, August 20, 1910, a sheriff's deed to the property was executed to the appellant, William Kroll.

The services rendered by the respondent which are the subject of controversy in this action were performed at the mines between the time mining operations ceased therein and a time some ten days later than the date on which the appellant received the sheriff's deed to the mining property. There was no question that the services were performed as alleged by the respondent; but the contract of hire was made with Arthur H. Kroll, and the question was whether it was made on his own behalf solely, or on behalf of himself and his father, the appellant. Aside from the facts recited showing the interests of the parties in the mining property, the respondent introduced in evidence the power of attorney executed by the appellant to Arthur H. Kroll, and the statements and declarations of Arthur H. Kroll as to the persons by whom the respondent was employed. These statements and declarations were admitted over the objection of the appellant, and the action of the court in so doing constitutes the first error assigned on this appeal.

If we have correctly gathered the appellant's first contention with regard to the admissibility of the questioned evi-

dence, it is that the respondent has sought to prove the agency of Arthur H. Kroll by the declarations of the agent himself. If this were the purpose of the evidence, then clearly it was inadmissible, as the rule is universal that the declarations of a supposed agent are inadmissible to prove the fact of agency. But it seems to us that the admissibility of the evidence has a much better foundation. The agency of the younger Kroll, and his power to make such a contract, were sought to be established by independent evidence, first, by the power of attorney, which preceded the contract of employment, and, second, by the fact that he had acted as the representative of his father in all of his father's dealings with the mining property. But the pleadings raised the question, not only as to the fact of agency, but whether or not the alleged contract was in fact made by the agent. On this latter question the evidence was clearly admissible, and such was our holding in *Lemcke v. Funk & Co.*, 78 Wash. 460, 139 Pac. 234, Ann. Cas. 1915 D. 23. In that case we said:

"It is, of course, elementary that the fact of agency cannot be proved by the acts and declarations of the alleged agent without the knowledge of the principal. A review of the authorities cited to that point would be coals to Newcastle. But where, as in this case, there was independent evidence tending to show the fact of agency and that the principal knowingly permitted the agent to hold himself out as manager of its farm lands department and to carry its business cards bearing that legend, then the acts and declarations of the agent were admissible on the issue as to whether in fact he did so hold himself out and did make the contract in question as the contract of the principal. There being other evidence to establish his authority to bind the principal, this evidence was admissible as showing that he in fact attempted to do so. . . .

"Moreover, it has often been held that, if the fact of agency be otherwise *prima facie* established, the acts and declarations of the alleged agent become admissible in corroboration.

" 'Any declaration of the agent as to his authority would be admissible, when other evidence had been shown from which authority to do the thing may be inferred; or, if the trial

court improperly admitted declarations of the agent, the error would be cured by evidence subsequently introduced from which authority might be inferred, and in case such evidence was introduced the question of authority would become one of fact for the determination of the jury.' *Eagle Iron Co. v. Baugh*, 147 Ala. 613, 41 South. 663.

"See, also, *Kelly v. Ning Yung Benev. Ass'n*, 2 Cal. App. 460, 84 Pac. 321; *Ham v. Brown Bros.*, 2 Ga. App. 71, 58 S. E. 316; *Singer & Talcott Stone Co. v. Hutchinson*, 184 Ill. 169, 56 N. E. 353; 31 Cyc. 1655."

Counsel for the appellant further say:

"The alleged agent could not in any event bind appellant by admissions concerning the question as to whether he was contracting in behalf of himself or in behalf of appellant. He could not bind appellant by any admission of appellant's ownership where the question to be determined was as to whether that particular property was owned by the agent or by his alleged principal. It requires but a casual consideration of the dangers of such testimony to show that it should be rejected. The rule is that one cannot sue an agent where the principal has been disclosed at the time of the transaction involved in the suit, and if the agent's admission to the effect that he represented his principal in transactions where he in fact was representing his own separate interest, were admissible then, he might, under such rule, bind his principal and thereby relieve himself from liability. Such a rule would make it hazardous to appoint agents, and profitable for agents to procure appointments."

But as we read the record, this evidence was not offered to show, nor admitted for the purpose of showing, that the appellant had an interest in the mining property. This was shown by independent evidence, competent under all circumstances. It was shown that the appellant had purchased outstanding mortgages upon the corporation's property, and had made advancements to it, taking a combined chattel and real mortgage on such property as security therefor; that the company had ceased mining operations, and that its property needed protection pending foreclosure proceedings which were then contemplated by the appellant.

His interest on the property being thus established, and it being shown that the agent had a general power of attorney to contract with reference to the appellant's concerns, the evidence objected to was admissible to show, as we say, that he had contracted in the appellant's behalf with respect to the particular property. In other words, the respondent did not attempt to establish the appellant's interest in the property by the declarations of the agent, but only that the agent had contracted in behalf of his interests in reference thereto. And herein the case differs from the case of *Coldwater Nat. Bank v. Buggie*, 117 Mich. 416, 75 N. W. 1057, principally relied upon by the appellant. In the trial of that case, the declarations of the agent were received to show the interests of the alleged principal, and the court on appeal held the evidence inadmissible for such purpose. Without inquiry into the correctness of the rule announced, we are clear that the question decided is not the question presented here.

Arthur H. Kroll while on the witness stand testified concerning his purchases of stock in the mining corporation, saying in substance (We quote from the abstract) :

"I became interested in this Spokane Silver Lead Mining Company about November, 1907. I first became interested in it in a small way in July, 1907, but went into it further in 1907. My July interest was $500, represented some stock, issued to myself. In November, 1907, I purchased under contract 95,000 shares of stock to be issued and paid for as the company needed the money; we paid $9,500."

He was then asked the question, "Whose stock was that in fact?" To this question, an objection was interposed, on the ground that it called for a conclusion. The objection was sustained by the trial court, and the ruling is assigned as error. But the witness was permitted to state in detail all of the circumstances concerning the purchases, as well as the subsequent disposition made of the stock. The jury were thus made acquainted with the facts and were competent themselves to draw conclusions as to its ownership. The

12—89 WASH.

error in refusing to permit the witness to answer the particular question, if error at all, was not so far prejudicial as to require a retrial of the action.

Error is also predicated on the ruling of the court refusing the appellant's offer to testify that, at the time the power of attorney given to the son was executed, he had no interest in the mining property; in refusing to permit the appellant to testify to the facts and circumstances in relation to giving the power of attorney; and in refusing to permit the appellant to testify that he had forbidden his son to enter into the contract in question. But we think the evidence was properly rejected on the ground of immateriality. Whether the appellant owned an interest in the mining property at the time the power of attorney was entered into could not affect the agent's right to contract with reference thereto in the appellant's behalf after the appellant had acquired such an interest. The power was general; it related to all business of the appellant, and was as applicable to after acquired interests as those existing at the time it was executed. One dealing with the agent with reference to particular property on the strength of the power of attorney could not be affected by the circumstance that the principal acquired his interest in the property subsequent to the time the power of attorney was executed. Indeed, he would rather have the right to suppose that it was executed in anticipation of a subsequent acquisition of such interests. So with the circumstances surrounding the execution of the power of attorney. The effect of such evidence could be only to limit the agent's authority thereunder, and the agent's authority, as between the agent and a stranger thereto, must be determined by the contents of the instrument itself; it cannot be affected by extraneous agreements. The ruling of the court rejecting the offer of the appellant to show that he had forbidden his son to make the contract in question with the respondent, is justified on the principle that a principal cannot limit his agent's general authority by secret instruction. The power

of attorney was recorded. To this the respondent had access, but he could not know of instructions limiting the general authority contained in the recorded power, not communicated to him, and no evidence was offered to show that they were so communicated.

Among the instructions given by the court are the following:

"If, under the evidence and these instructions, your verdict is in favor of the plaintiff, your verdict will be for the amounts prayed for in the two causes of action, to-wit, the sum of three hundred and fifty dollars, with interest thereon at the rate of six per cent per annum, from the 30th day of September, 1909, on the first cause of action; and the sum of twelve hundred dollars with interest thereon at the rate of six per cent per annum from the 30th day of September, 1910, on the second cause of action. If, upon the other hand, your verdict is in favor of the defendant, your verdict will be simply for the defendant."

It is objected that these instructions did not permit the jury to find separately upon each cause of action, but required them, if they found either cause of action proven, to return a verdict in favor of the plaintiff regardless of what might be their opinion on the other, and it is argued that there was evidence in the record which might induce the jury to find in favor of the plaintiff on the last cause of action stated which was inapplicable to the other. If there had been no other instructions concerning the issues involved, we think it may be questioned whether the instruction bears the interpretation the appellant puts upon them. The instructions, however, as a whole were not misleading. There was, it is true, no specific instruction on the particular point; but the issues were clearly stated to the jury, and they were told that they must find for the appellant unless they found, by a preponderance of the evidence, that the agent did in fact make the contracts with the respondent as the agent of, and for and on behalf of, the appellant, William Kroll. Indeed, it seems to us, as the respondent argues, that the instructions

were more objectionable from his point of view than from the point of the appellant, but we are not constrained to adopt either theory. We think the jury were in no way misled.

Lastly, it is contended that the evidence was insufficient to justify the verdict. We think, however, it would not profit to enter upon a further review of the evidence. Upon all of the controverted issues there was substantial evidence in support of the respondent's contention. The jury's findings thereon are therefore conclusive.

The judgment is affirmed.

MORRIS, C. J., MAIN, and ELLIS, JJ., concur.